**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **EMMA BOWAR,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **CAUSE NO.: _____** |
| | § | |
| **THE CITY OF EL PASO; EL PASO** | § | |
| **POLICE DEPARTMENT CHIEF** | § | |
| **OFFICER, GREG ALLEN; and JOHN** | § | |
| **and JANE DOES,** | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Emma Bowar by and through undersigned counsel, Fernando Chacon, complaining against City of El Paso, El Paso Police Department Chief Officer, Greg Allen, and John and Jane Does, the individual police officers and would show unto the Court the following:

## INTRODUCTION

1. George Floyd's murder at the hands of a Minneapolis police officer sparked instant worldwide protest against police brutality towards African-Americans in America. As the news of George Floyd's murder broke, the protestors instantly took to the streets to express their outrage at police brutality against African-Americans in America. These protests were called the Black Lives Matter (hereinafter referred to as "BLM") movement. The City of El Paso was no exception to the BLM, as peaceful protestors have made their voices heard. The protests in El Paso were also an instant reaction to instances of police violence across the country and a reaction to local police violence and the use of excessive force. Even as demand for use-

of-force reforms grows, El Paso police officers continue to use unjustified, excessive force against unarmed and/or already detained citizens.

2.      The City of El Paso (hereinafter referred to as the "City") enforces the unconstitutional Municipal Code that provides no procedure to obtain a permit for protest or march in less than seven days.  The City Paso has effectively criminalized peaceful assembly and expression rights if it takes place in less than seven days.

3.      Upon information and belief, El Paso Police Department Chief Officer Greg Allen (hereinafter referred to as "Chief Allen") is responsible for investigating any accusations and disciplining his officers when they have done wrong.  However, Chief Allen is intensely loyal to his officers and supports them when they are accused of wrongdoing or use of excessive force. This made the El Paso police officers violate citizens' constitutional rights with impunity.  Chief Allen does not believe in disciplining his police officers.

4.      Plaintiff seeks to declare Municipal Code unconstitutional and redress Defendants' willful, deliberate, and clear constitutional violations and the harm that she has suffered as a result.  Furthermore, Plaintiff is entitled to damages, costs, attorney's fees, punitive damages, and any other relief this Court deems appropriate for the violations of her civil rights.

**VENUE AND JURISDICTION**

5.      This action arises under 42 U.S.C. §1983, which permits the institution of an action for deprivation of rights, privileges and/or immunities secured by the Constitution and laws of the United States when such deprivation occurs under color of any state, statute, ordinance, regulation, custom or usage.

6.      Title 42 U.S.C. § 1983 does not grant substantive rights but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws.

*Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994). It provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. *Id.*

7.      Jurisdiction is conferred on this Court by 28 U.S.C. §1331 et seq. for civil rights claims arising under the Constitution and laws of the United States.  Pursuant to §1331, this Court has original subject matter jurisdiction over Plaintiff's claims brought under 42 U.S.C. §1983.

8.      The acts or omissions giving rise to Plaintiff's claims all occurred in El Paso County, Texas, and all parties reside or operate in El Paso County, Texas.  Thus, pursuant to 28 U.S.C. § 1391(b)(2) and (c), the venue is proper in the United States District Court for the Western District of Texas.

## PARTIES

9.      Plaintiff, Emma Bowar is a U.S. citizen who resides in El Paso County, Texas.

10.      Defendant City of El Paso is a Texas incorporated city/municipality.  The City may be served with the process by serving its Secretary, Irma Mendoza, at 300 N. Campbell, El Paso, TX 79901.

11.      Defendant Chief Allen, at all times material to this Complaint, was El Paso Police Department, Chief Officer.  Chief Allen is sued in his individual and official capacities.  Chief Allen was a "Person" under 42 U.S.C §1983 who acted under color of law and provided general direction to the SWAT team and other police officers during the protest.

12.      Upon information and belief, Chief Allen convened El Paso Police Department leadership and prepared for mass protests in El Paso after May 25, 2020, killing of George Floyd

without imposing any enforceable or meaningful restraints on the use of excessive force. Chief Allen authorized Defendant Police Officers to use excessive force against the protestors. Chief Allen continuously monitored the mass protests on May 31, 2020, in El Paso and was aware of excessive use of force by Defendant Police Officers. Chief Allen failed to provide effective policies and adequate training, supervision and/or discipline by or on behalf of Defendant City in the use of force during demonstrations, marches, and protests.

13.    Defendant Chief Allen acted, at all material times, under the color of state law and within the scope of his duties.

14.    Defendants John and Jane Does, at all material times, were police officers for the City, and acted under the color of state law and within the scope of their duties.

15.    Defendants John and Jane Does, at all times material to this Complaint, were police officers whose identities are currently unknown to Plaintiff. They are being sued in both their individual and official capacities. They are or were employees of the City. They have used or tolerated the use of excessive force by other officers; received inadequate training, supervision on reasonable discipline to use force during demonstrations by or on behalf of the City. They are a "Person" under 42 U.S.C. §1983 who acted under color of law and within the scope of their duties.

## STATEMENT OF FACTS

16.    For years, African-Americans have been the victims of police and vigilante use of deadly excessive force.

17.    On May 25, 2020, the killing of George Floyd, who was being arrested for allegedly passing a counterfeit $20 bill to buy cigarettes by the Minneapolis Police Department

Officers, was live-streamed over the internet for few minutes, and later it was televised around the world.

18.     After watching this video and hearing the news on television, Plaintiff decided to demonstrate against the excessive use of force by the police; the disparate impact on minority communities of law enforcement policies; a pattern or practice of governments at all levels tolerating systematic racism and failing to adopt effective policies or implement adequate training, supervision, and discipline of law enforcement officers.

19.     On May 29, 2020, at 9:41 p.m., Plaintiff posted her first flyer on her social media "Instagram" account, promoting a protest outside the police station on Raynor Street on Sunday evening, May 31, 2020.  Plaintiff wanted to organize the protest march in solidarity with the BLM movement and justice for the George Floyd movement.

20.     On May 29, 2020, Plaintiff had 150 followers on her Instagram account when she made the original post for a protest on May 31, 2020.  Plaintiff's May 29, 2020, social media post garnered much more attention than she had initially anticipated, but she decided to move forward with the protest considering the national importance of the issue.

21.     Later on, Plaintiff was approached by someone on her Instagram account, who offered her to make a better flyer since the one she had posted on May 29, 2020, was woefully inadequate.   In every iteration of the flyer, she asked everyone to protest verbally and emphasized that we would have to remain peaceful and disengage from police officers.

22.     During this process, Plaintiff was in touch with some local organizations, who were not organizing anything yet themselves.  One of the organizations had suggested that she change the original meeting point, i.e., outside of the El Paso police station at N. Raynor Street to Memorial Park, so that the protest would be less confrontational.

23.     After considering the options, on May 30, 2020, late Saturday night, Plaintiff changed the location from El Paso Police Station at Raynor Street to Memorial Park.  After that, she made another post on her "Instagram" account to let everyone know and encouraged everyone to share this information that "Everyone meets at Memorial Park on May 31, 2020, at 6:00 p.m."

24.     On May 31, 2020, when Plaintiff, along with her followers or protestors or demonstrators, reached the Memorial Park, had a moment of silence, and then she opened the floor to speeches.

25.     Before the protest march began, El Paso Police Department's officers approached Plaintiff and informed that they would be providing a motorbike escort to Plaintiff's march.  The officers informed Plaintiff that they would stay in touch with protestors during their march if Plaintiff and other protestors or demonstrators had any issues.  Plaintiff was never informed that she could not hold the protest march.

26.     On May 31, 2020, at about 6:45 p.m., Plaintiff and her Instagram followers marched towards the El Paso police station and arrived there at around 7:00 p.m.  They protested outside the police station until 7:25 p.m.  At that point, when most of the demonstrators marched back to the Memorial Park, Plaintiff confirmed with the officers of El Paso Police Department that those who stayed there were not considered part of her group.

27.     When Plaintiff and other demonstrators were marching back to Memorial Park, she was at the back of the crowd as she was assisting a woman who was having some issues. When Plaintiff was at the corner of Grant and Raynor Street, she started telling people to go home as she saw two police cars drive by with their sirens on towards the other end of the park, and she went running after them.

28.     At the other end of Memorial Park near Copia, Plaintiff saw a group of protestors lying on the ground and another group lying down towards the street, protesting near a SWAT team car.

29.     At around 8:00 p.m., Plaintiff saw more and more police arriving in riot gear. The police had been waiting at Memorial Park in riot gear and with a SWAT team to confront the peaceful protestors.  No one had gotten out of hand until that point.  There wasn't any act of aggression or violence on behalf of the protestors.

30.     Plaintiff went to the group of the protestors near the SWAT car, tried to convince them to keep marching, and go home and tried to deescalate the situation.  It became apparent to Plaintiff that this particular crowd was no longer interested in listening to her, so she left the protest.  Plaintiff encouraged everyone to do a peaceful demonstration from the beginning. Plaintiff left the place of protest by 8:20 p.m.

31.     The planning and execution of this protest took less than 48 hours and entirely over the weekend.

32.     Plaintiff and other demonstrators in El Paso exercised their rights of assembly and expression by gathering in Memorial Park.  Social media facilitated the scheduling of the demonstration and protest march.

33.     The goal of Plaintiff and other demonstrators included engendering serious, effective, and immediate actions to bring a halt to the endemic racism infecting America's law enforcement and justice systems.  Plaintiff and other demonstrators also wanted to engender efforts to halt the general tolerance of excessive force routinely administered by police officers against arrestees, regardless of innocence or guilt, especially against citizens of the African-American community.

34.     Plaintiff and other demonstrators have suffered injuries to their civil rights and their bodies.  The use of force was escalated even though the demonstrators, including Plaintiff, posed no threat to police or public safety.

35.     Defendants knew that on May 31, 2020, Plaintiff and other demonstrators would protest in Memorial Park and outside of the El Paso Police Department against the killing of George Floyd by a Minneapolis police officers.

36.     Almost immediately after the demonstrators, including Plaintiff, began to gather and demonstrate, Defendants, police officers began to arrive at the protest site.

37.     Defendants, police officers were dressed in full riot gear, including helmets and face covering, armed with guns, batons, pepper sprays, and tear gas, as well as other weapons and equipment such as gas masks.  The City's SWAT teams were wearing gas masks, were part of the law enforcement gathering.

38.     Anticipating the El Paso protests, many El Paso police officers and their supervisors, and the SWAT team decided to chill the exercise of association and freedom of expression by demonstrators.

39.     The Chapter 13.36 Parades and Public Assemblies of the El Paso, Texas Municipal code regulates the procedure for obtaining permits by an individual or group for a protest and march.

40.     The El Paso Municipal code 13.36.020 requires a permit for a demonstration or a march.  It provides that no parade or public assembly is permitted unless a permit allowing such activity has been obtained pursuant to this chapter.

41.     The El Paso Municipal code 13.36.030 A requires "[a]n application for a parade or public assembly permit shall be made in writing on a form prescribed by the permit official at

least thirty days before the commencement of the event, but not more than one year in advance of the event."

42.     The El Paso Municipal code 13.36.030 B provides "…the permit official may consider an application that is filed less than thirty days before the commencement of the proposed event where the purpose of such event is a spontaneous response to a current event of interest to the city as a whole or where filed more than seven days but less than thirty days where other good and compelling causes are shown, and the short notice does not unreasonably hinder or prejudice the city in preparing for the event."

43.     The El Paso Municipal code 13.36.030 C requires the application form to recite the particular information required to be disclosed to the City for the permit.

44.     On June 9, 2020, Plaintiff was cited and charged for not having a permit to protest on May 31, 2020.  Currently, Plaintiff is facing prosecution for failing to obtain a permit for protest in the Municipal Court, El Paso, Texas.

45.     Defendant City, through its Chief Allen, knew that such tactics were used to provoke demonstrators and justify arrests, but he did not intervene to limit their use.

46.     These actions of Defendant City through its Chief Allen and police officers were unreasonably intrusive, offensive, unlawful, and totally unnecessary under the circumstances; therefore, Defendant had no state law privilege as law enforcement officers to perform the alleged acts.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DECLARATORY JUDGMENT
**(Declaring El Paso Municipal Code Unconstitutional)**
**(Against Defendant City and Chief Allen)**

47.     Plaintiff repeats, realleges, and incorporates by reference the paragraphs 1-46 with the same force and effect as if set forth herein.

48.     On or about June 9, 2020, Plaintiff was issued a citation for not having a permit to protest.

49.     The First Amendment to the United States Constitution generally bars state governments from requiring a permit when one person or a small group protests in a park or when a group of any size protests on a public sidewalk in a manner that does not burden pedestrians or vehicles traffic.

50.     Plaintiff's exercise of free speech, demonstration, and protest was done in a short period of time in response to breaking news.  It was a spontaneous response to current events, namely the execution of George Floyd by the Police.

51.     Chapter 13.36 Parades and Public Assemblies of the El Paso, Texas Municipal Code regulates the procedure for obtaining permits by an individual or group for protest and march.

52.     The El Paso Municipal Code, 13.36.030 A, and 13.36.030 B are unconstitutional as they fail to consider the modern-day reality where protests are happening spontaneously in response to rapidly unfolding news or events where the seven-to-thirty-day notice is not practical and serves as an obstacle to the right to assemble and demonstrate peaceably.

53.     The El Paso Municipal Code does not provide a mechanism to address protests that may unfold in one day, two days, or three days, or less than one week.  It provides for advance notice and application for 30 days in general and one week in some situations only.  As in the case here, Plaintiff's idea of a protest transpired from Friday to the scheduled Sunday.

54.     The El Paso Municipal Code is also totally devoid of a mechanism available to the citizenry for situations such as this, where the desired need to protest is immediate and in response to unfolding events of legitimate public concern.  The lack of procedure effectively criminalizes the constitutionally protected First Amendment activity.  The El Paso Municipal Code impinges on the right of citizens to free speech, protest, and assemble.  The El Paso Municipal Code is unconstitutional because it violates the doctrine of overbreadth.

55.     The El Paso Municipal Code is unconstitutional because it only allows late application for a permit for an event that is in the interest of the entire city, and this is decided by the city officials only.  It effectively stifles and/or restricts the free expression right of the citizens.

56.     The El Paso Municipal Code is unconstitutional because it violates the doctrine of overbreadth. "[E]ven content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression." *Sullivan v. City of Augusta*, 406 F. Supp. 2d 92, 115 (D. Me. 2005).

57.     An actual controversy has arisen and now exists between Plaintiff and Defendants concerning the constitutionality and validity of the El Paso Municipal code's permit requirement for demonstration and/or protest march.  Plaintiff contends that the El Paso Municipal Code is unconstitutional and invalid, while Defendants contend that it is constitutional and valid.

58.     A judicial declaration is necessary and appropriate at this time, under the circumstances presented, so that Plaintiff and Defendants may ascertain their respective rights and duties with respect to the El Paso Municipal code permit requirement provisions.

59.     Without a declaratory judgment from this Court stating that the City's enforcement of El Paso Municipal Code is unconstitutional as applied to Plaintiff under the First

Amendment to the United States Constitution.  Plaintiff faces a real and serious threat of physical harm, prosecution, and/or fine now and/or will face in the future if she continues to engage in her protected peaceful protests.

### SECOND CAUSE OF ACTION
### SUPPRESSION OF FREEDOM OF SPEECH AND EXPRESSION
### (42 U.S.C. § 1983 claim – Violation of First and Fourteenth Amendments)
### (Against all Defendants)

60.     Plaintiff repeats, realleges, and incorporates by reference the paragraphs 1-46 with the same force and effect as if set forth herein.

61.     The First Amendment to the United States Constitution, as applied to state governments through the Fourteenth Amendment, prohibits a state from "abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I.

62.     The First Amendment prohibits "restrict[ing] expression because of [expression's] message, its ideas, its subject matter or its content." *Ashcroft v. A.C.L.U.*, 535 U.S. 564, 573 (2002).

63.     Defendants violated Plaintiff's right to free speech and expression by beating the protestors, charging Plaintiff for failure to obtain a permit for the protest or march, using SWAT team against peaceful protestors for no reason, and otherwise deterring Plaintiff and other protestors from engaging in constitutionally protected right to express their views by peacefully protesting.

64.     Plaintiff and other protestors were not violating the laws or engaging in activity dangerous to public safety.

65.     Defendants' actions caused physical harm and posed physical threats to Plaintiff, and other protestors.  Defendants' actions improperly restricted, deterred, and chilled Plaintiff's

right of free speech and expression as guaranteed by the First Amendment to the U.S. Constitution. Defendants unlawfully suppressed Plaintiff's freedom of speech and prevented the peaceful assembly of Plaintiff and other protestors. Defendants were acting under color of law and caused or will cause Plaintiff to be deprived of her constitutional rights in violation of 42 U.S.C. §1983.

66.     Defendants' actions have the effect of preventing Plaintiff from engaging in such protests in the future. Based on the harassment, citation, prosecution, and use of force against Plaintiff and other protestors, Plaintiff fears that she will be harmed, threatened, and/or harassed if she engages in peaceful demonstrations and protests again.

67.     As a direct and proximate result of Defendants' violations of the First and Fourteenth Amendments, Plaintiff has suffered, is suffering, and will continue to suffer damages in an amount subject to proof. In addition, as a direct and proximate result of Defendants' actions, Plaintiff has sustained and continues to sustain depression, anxiety, severe mental or physical pain and/or anguish of mind and is prevented from transacting in her usual business and enjoyment.

68.     Plaintiff is entitled to monetary, compensatory, and punitive damages from Defendants.

69.     It has been necessary for Plaintiff to retain the services of the undersigned attorney to pursue this matter, and she is entitled to attorney's fees, costs, and pre-judgment interest herein.

**THIRD CAUSE OF ACTION**
**SUPPRESSION OF RIGHT TO ASSEMBLY**
**(42 U.S.C. § 1983 claim – Violation of First and Fourteenth Amendments)**
**(Against all Defendants)**

70.     Plaintiff repeats, realleges, and incorporates by reference the paragraphs 1-46 with the same force and effect as if set forth herein.

71.     Plaintiff has and had the right to assemble, guaranteed by the First Amendment.

72.     Plaintiff and other demonstrators were not violating any law or engaging in activity dangerous to public safety.

73.     Defendant police officers unlawfully suppressed Plaintiff's right to assemble and prevented the peaceful assembly of Plaintiff and other demonstrators.

74.     Defendants acted under color of law and violated Plaintiff's right to assembly, as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution.  Defendants investigated, harassed, cited, arrested, and used excessive force against Plaintiff for assembling in a group at a public forum, protesting racism and police violence against African-American people.

75.     Defendants violated Plaintiff's right to assemble by using SWAT team and police in full riot gear against peaceful protestors.

76.     Defendants violated Plaintiff's right to assemble by charging and prosecuting Plaintiff for failure to obtain a permit for protest or march.

77.     Defendants violated Plaintiff's right to assemble when the police started beating the protestors for no reason.

78.     Defendant City is liable because, at all relevant times, it was responsible for making and enforcing policies with respect to officers' interactions with citizens and ensuring that officers were aware of relevant law with respect to the right to assembly guaranteed by the First and Fourteenth Amendments.  Also, it failed to do so by permitting its officers to regulate, harass, cite and arrest citizens for peacefully demonstrating in public fora.

79.     Defendant City is also liable because it enacted and enforced the El Paso Municipal Code that unreasonably restricts citizens' right to assemble.

80.     As a direct and proximate result of Defendants' violations of the Fourth and Fourteenth Amendments, Plaintiff has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.  In addition, as a direct and proximate result of Defendants' actions, Plaintiff has sustained and continues to sustain depression, anxiety, severe mental or physical pain and/or anguish of mind and is prevented from transacting in their usual business and enjoyment.

81.     Plaintiff is entitled to monetary, compensatory, and punitive damages from Defendants.

82.     It has been necessary for Plaintiff to retain the services of the undersigned attorney to pursue this matter, and she is entitled to attorney's fees, costs, and pre-judgment interest herein.

///

## FOURTH CAUSE OF ACTION
## USE OF EXCESSIVE FORCE
### (42 U.S.C. § 1983 claim – Violation of Fourth and Fourteenth Amendments)
### (Against all Defendants)

83.     Plaintiff repeats, realleges, and incorporates by reference the paragraphs 1-46 with the same force and effect as if set forth herein.

84.     The Fourth Amendment to the U.S. Constitution, as applied to state governments through the Fourteenth Amendment, provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated…" U.S. Const. Amend. IV.

85.     Plaintiff has and had a Fourth Amendment right to be free from law enforcement officers' excessive use of force.

86.     42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

87.     Defendants acted under color of law and violated Plaintiff's right to be free from the use of excessive force by law enforcement officers.

88.     Defendant City is liable because, at all relevant times, it was responsible for making and enforcing policies concerning Defendant police officers' use of force.  Defendant Chief Allen is liable for his failure to investigate and discipline police officers involved in the use of excessive force.

89.     Defendants used excessive force when they indiscriminately started beating the protestors for no reason and without warning.

90.     Defendants also used excessive force when they used the SWAT team against the peaceful protestors for no reason.  These protestors, including Plaintiff, posed no threat to law enforcement and were exercising their constitutional right of assembly and free speech.

91.     Defendants also used excessive force when they deployed the police in full riot gear against peaceful protestors for no reason.  Defendants used excessive force to chill the exercise of association and freedom of expression by protestors.

92.     "A decision to employ a SWAT-type team can constitute excessive force if it is not "objectively reasonable" to do so in light of "the totality of the circumstances." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003)." See *Giordano v. Murano-Nix*, No. 12-7034, 2014 U.S. Dist. LEXIS 1861, at *32-33 (E.D. Pa. 2014).

93.     Defendants deprived Plaintiff and other protestors of their right to be free from excessive use of force by police officers.

94.     Defendants' excessive use of force caused damages, including emotional distress and physical injury to protestors.

95.     Defendants' actions were willful, wanton, and obdurate; acted in gross and reckless disregard of Plaintiff's and other protestors' constitutional rights.

96.     As a direct and proximate result of Defendants' violation of the Fourth Amendment, Plaintiff has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.  In addition, Plaintiff, as a direct and proximate result of Defendants' action, has sustained and continue to sustain depression, anxiety, severe mental or physical pain and/or anguish.  Throughout the ordeal described above, Plaintiff felt frightened, humiliated, and embarrassed and suffered severe mental anguish.  Plaintiff continues to suffer severe mental anguish that interferes with her ability to carry out life's day-to-day responsibilities and enjoy life.  Plaintiff reasonably expects to continue to suffer such anguish for a long time into the future.

97.     Plaintiff is entitled to monetary, compensatory, and punitive damages from Defendants.

98.     It has been necessary for Plaintiff to retain the services of the undersigned attorney to pursue this matter, and she is entitled to attorney's fees, costs, and pre-judgment interest herein.

## ATTORNEYS FEES

99.     Defendants' conduct and the resulting damages to Plaintiff necessitated her retention of the undersigned attorney.

100.    Plaintiff be awarded costs and attorney's fees pursuant to 42 U.S.C §1988 and Fed. R. Civ. P. 54.

101.    Plaintiff reserves the right to amend her Original Complaint in this case, pursuant to the Fed. R. Civ. P.15.

## JURY TRIAL DEMANDED

102.    Plaintiff hereby demands trial by jury for all causes of action, claims, or issues in this action that are triable as a matter of right to a jury.

## PRAYER

WHEREFORE, Plaintiff respectfully prays and demands the following:

A.  That Defendants be summoned to appear and answer;

B.  Declaratory judgment against Defendant City declaring El Paso Municipal Code requiring permit for demonstration and march unconstitutional;

C.  Judgment declaring that Defendants have violated Plaintiff's civil rights;

D.  Judgment for damages within the jurisdictional limits of the Court and against Defendants jointly and severally, as legally applicable, for:

  I.      Actual damages;

II.     Exemplary or punitive damages;

III.    Reasonable and necessary attorney's fees through trial and appeals and other appellate proceedings, pursuant to 42 U.S.C. §§1983 and 1988;

IV.     Court costs and all other recoverable costs;

V.      Pre-judgment and post-judgment interest as provided by law;

E.  All other relief, legal and equitable, general and special, to which Plaintiff is entitled.


October 6, 2021                                    Respectfully submitted,

                                                   */s/ Fernando Chacon*
                                                   FERNANDO CHACON, ESQ.
                                                   State Bar No. 04052800
                                                   Law Office of Fernando Chacon
                                                   730 Hemphill Court
                                                   El Paso, TX 79907
                                                   (915) 542-3850
                                                   attorney.fchacon@yahoo.com
                                                   *Attorney for Plaintiff*
                                                   EMMA BOWAR