IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| EMMA BOWAR,<br>　　Plaintiff,<br><br>v.<br><br>THE CITY OF EL PASO; EL PASO<br>POLICE DEPARTMENT CHIEF<br>OFFICER, GREG ALLEN; and JOHN<br>and JANE DOES,<br>　　Defendants. | §<br>§<br>§<br>§<br>§　CAUSE NO. EP-21-CV-00257-KC<br>§<br>§<br>§<br>§<br>§ |

## REPORT AND RECOMMENDATION
## OF THE MAGISTRATE JUDGE

On this day, the Court considered "Defendant City of El Paso and Defendant Greg Allen's Rule 12(b)(6) Motion to Dismiss Plaintiff's Original Complaint" ("Motion") (ECF No. 16) and the parties' subsequent related filings (ECF Nos. 17, 19–20, 23). On March 22, 2022, United States District Judge Kathleen Cardone referred the Motion to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules Appendix C. (Text order dated March 22, 2022.) For the reasons set forth below, the Court **RECOMMENDS** that the Motion should be **GRANTED IN PART** and **DENIED IN PART**.

### I.　BACKGROUND

**A. Factual Background[1]**

After the killing of George Floyd on May 25, 2020, Plaintiff "decided to demonstrate against the excessive use of force by police; the disparate impact on minority communities of law enforcement policies; a pattern or practice of governments at all levels tolerating systematic racism and failing to adopt effective policies or implement adequate training, supervision, and discipline

---

[1] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

of law enforcement officers." (ECF No. 1:4–5.) On May 29, 2020, Plaintiff posted a flyer on her Instagram account, "promoting a protest outside the police station on Raynor Street on Sunday evening, May 31, 2020." (*Id.* at 5.) On May 30, 2020, "Plaintiff changed the location from El Paso Police Station at Raynor Street to Memorial Park," and announced via Instagram that protest participants should "meet[] at Memorial Park on May 31, 2020, at 6:00 p.m." (*Id.* at 6.) "In every iteration of the flyer, [Plaintiff] asked everyone to protest verbally and emphasized that we would have to remain peaceful and disengage from police officers." (*Id.* at 5.)

On May 31, 2020, when Plaintiff and other protest participants (collectively, "demonstrators" or "protestors") met at Memorial Park, they "had a moment of silence, and then [Plaintiff] opened the floor to speeches." (*Id.* at 6.) Before the demonstrators began marching, "El Paso Police Department's officers approached Plaintiff and informed that they would be providing a motorbike escort to Plaintiff's march" and that "they would stay in touch" in case the demonstrators "had any issues." (*Id.*) "Plaintiff was never informed that she could not hold the protest march." (*Id.*) At about 6:45 p.m., the demonstrators "marched towards the El Paso police station and arrived there at around 7:00 p.m. They protested outside the police station until 7:25 p.m.," at which point they returned to Memorial Park. (*Id.*) Plaintiff asserts that anyone who remained at the police station after that time was "not considered part of her group." (*Id.*)

As the demonstrators marched back to Memorial Park, Plaintiff "started telling people to go home as she saw two police cars drive by with their sirens on." (*Id.*) "At the other end of Memorial Park near Copia, Plaintiff saw a group of protestors l[a]ying on the ground and another group l[a]ying down towards the street, protesting near a SWAT team car." (*Id.* at 7.) "At around 8:00 p.m., Plaintiff saw more and more police arriving in riot gear. The police had been waiting at Memorial Park in riot gear and with a SWAT team to confront the peaceful protestors. No one

had gotten out of hand until that point." (*Id.*)  Plaintiff describes the "riot gear" as "including helmets and face covering, armed with guns, batons, pepper sprays, and tear gas, as well as other weapons and equipment such as gas masks." (*Id.* at 8.)  Plaintiff approached the protestors laying near the SWAT car, "tried to convince them to keep marching[] and go home[,] and tried to deescalate the situation." (*Id.* at 7.)  However, after Plaintiff realized that these demonstrators were "no longer interested in listening to her," she left the protest by 8:20 p.m. (*Id.*)  "The planning and execution of this protest took less than 48 hours and entirely over the weekend." (*Id.*)

On or about June 9, 2020, "Plaintiff was cited and charged for not having a permit to protest on May 31, 2020." (*Id.* at 8–9.)  On January 10, 2022, the El Paso municipal court dismissed this charge. *See* (ECF No. 19:2, 6.)

**B. Procedural Background**

On October 14, 2021, Plaintiff filed her Complaint against Defendants City of El Paso, El Paso Police Department Chief Officer Greg Allen, and El Paso Police Department Officers John and Jane Does, seeking (1) a declaratory judgment declaring certain provisions of the El Paso City Code as unconstitutional, and alleging (2) suppression of rights to free speech, (3) suppression of right to assembly, and (4) use of excessive force.  (ECF No. 1:9–18.)  Plaintiff sues Defendants Allen and Does in both their individual and official capacities. (*Id.* at 3–4.)  All Defendants were served on December 6, 2021.  (ECF Nos. 13–15.)  On December 23, 2021, Defendants City and Allen filed their "Rule 12(b)(6) Motion to Dismiss Plaintiff's Original Complaint" ("Motion"). (ECF No. 16.)[2]  On January 6, 2022, Plaintiff filed her "Response to Defendant City of El Paso and Defendant Greg Allen's Rule 12(b)(6) Motion to Dismiss Plaintiff's Original Complaint" ("Response").  (ECF No. 17.)  After the Court granted Plaintiff leave to supplement her Response,

---

[2] The Court notes that Defendants John and Jane Does did not join in the Motion and to date have not otherwise answered Plaintiff's Complaint.

3

she filed her Supplemental Response on January 18, 2022 ("Supplemental Response"). (ECF No. 19.)  On January 24, 2022, Defendants City and Allen filed a "Response to Plaintiff's Supplemental Response," which the Court construes as a Reply ("Reply").  (ECF No. 20); (W.D. Tex. Civ. R. 7).  After the Court granted Plaintiff leave to file a reply to Defendants' Reply, she filed such on February 17, 2022, which the Court construes as a surresponse ("Surresponse").  (ECF No. 23.)

## II.     LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) provides for dismissal of a complaint when a defendant shows that the plaintiff has "fail[ed] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts. *Id.* ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Twombly*, 550 U.S. at 555)).

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief."  *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted).  A complaint states a "plausible claim for relief" when the factual allegations contained therein allow the court to infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.  The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual

allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

### III.   DISCUSSION

#### A. Declaratory Judgment

Plaintiff seeks a declaratory judgment declaring certain provisions of the El Paso City Code to be unconstitutional.  (ECF No. 1:10–11.)  Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration" in a case that is an "actual controversy within its jurisdiction." 28 U.S.C. § 2201(a).[3] "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57.

An "actual controversy" is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In the case of a threatened government action, a plaintiff need not "expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007).

Plaintiff requests declaratory judgment "so that Plaintiff and Defendants may ascertain their respective rights and duties" under the pertinent municipal code provisions, particularly "if [Plaintiff] continues to engage in her protected peaceful protests" in the future.  (ECF No. 1:11–

---

[3] The Declaratory Judgment Act does not apply to certain types of cases, none of which are present here.  *See* 28 U.S.C. § 2201.

12.) Specifically, Plaintiff argues that El Paso City Code sections 13.36.030 A and B "are unconstitutional as they fail to consider the modern-day reality where protests are happening spontaneously in response to rapidly unfolding news or events where the seven-to-thirty-day notice is not practical and serves as an obstacle to the right to assemble and demonstrate peaceably." (*Id.* at 10.) She also argues that "[t]he El Paso Municipal Code does not provide a mechanism to address protests that may unfold in one day, two days, or three days." (*Id.*) Plaintiff further claims that the municipal code's failure to account for protests that unfold in less than a week "stifles" and "effectively criminalizes the constitutionally protected First Amendment activity" and "violates the doctrine of overbreadth." (*Id.* at 11.)

In their Motion, Defendants City and Allen originally argued for dismissal of Plaintiff's declaratory judgment claim pursuant to the *Younger* abstention doctrine[4] because facts underlying that claim—Plaintiff's noncompliance with El Paso protest permit requirements—was the subject of pending litigation in El Paso municipal court. (ECF No. 16:3.) But as Plaintiff explains in her Supplemental Response, the municipal court dismissed the charge against Plaintiff on January 10, 2022. (ECF No. 19:2, 6.) The parties now agree that the *Younger* abstention doctrine no longer applies to Plaintiff's declaratory judgment claim. (*Id.* at 2–3); (ECF No. 20:2.)

However, in Defendants City and Allen's Reply to Plaintiff's Supplemental Response, they argue that Plaintiff's request for declaratory judgment should nonetheless be dismissed because she incorrectly stated that she was prosecuted under El Paso City Code § 13.36.030 ("Parade Ordinance"), when in fact she was charged under El Paso City Code § 13.34.020 ("Picket Ordinance") (collectively, "Permit Ordinances"). (ECF No. 20:2); *see* (*id.* at 5) (attaching the complaint from the municipal court proceeding, which states that Plaintiff, "as the organizer of a

---

[4] *Younger v. Harris*, 401 U.S. 37 (1971).

picket that [Plaintiff] knows or should know will be attended by a group of twenty-five or more individuals[,] fail[ed] to give notice of intent to picket to the chief of police or his designee at least seventy-two hours before the beginning of the picket in violation and contrary to section 13.34.020 of the El Paso City Code, as amended"). Thus, Defendants argue, Plaintiff's claim should be dismissed because she "failed to state a cause of action relating to the ordinance that she was actually cited for." (*Id.* at 2.)

Responding to Defendants' Reply, Plaintiff asserts that Defendants waived their new argument because they "failed to raise it in their Motion to Dismiss." (ECF No. 23:2–3.) She also argues that her request for declaratory judgment "challenged all El Paso Municipal Code notice provisions as unconstitutional," and thus includes the Picket Ordinance. *See* (*id.* at 3) (citing ECF No. 1:10.)

**1. Waiver**

The Court first considers the waiver issue. "Arguments raised for the first time in a reply brief are *generally* waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (emphasis added). However, the Court may consider a new argument raised in a reply after giving the opposing party an opportunity to address the argument. *Id.* at 541 & n.12; *see, e.g.*, *Almon v. Conduent Bus. Servs., LLC*, No. SA-19-CV-01075-XR, 2022 WL 902992, at *12 (W.D. Tex. Mar. 25, 2022); *Fernandez-Lopez v. Hernandez*, No. DR-19-CV-46-AM/CW, 2020 WL 9396487, at *6 (W.D. Tex. Nov. 20, 2020).

Here, the Court granted Plaintiff leave to file a surresponse to Defendants' Reply, and thus provided her with a chance to address Defendants' new argument. (Text order entered February 16, 2022). Thus, the Court will consider Defendants City and Allen's argument for dismissal based on Plaintiff's citation to the incorrect ordinance.

### 2. Sufficiency of Plaintiff's Declaratory Judgment Claim

The Court reads Plaintiff's Complaint as sufficiently invoking the Picket Ordinance in her claim for declaratory judgment. Despite the fact that Plaintiff's Complaint cites to provisions of the Parade Ordinance, it also states that her "planning and execution of this protest took less than 48 hours and entirely over the weekend" and that "[t]he El Paso Municipal Code does not provide a mechanism to address protests that may unfold in one day, two days, or three days." (ECF No. 1:7, 10.) These statements factually implicate the Picket Ordinance, which requires a minimum of seventy-two hours' notice of intent to picket. *See* (ECF No. 20:5.) Further, the Court recognizes that "when a complaint contains sufficient 'factual allegations,' a court should not grant a motion to dismiss 'for imperfect statement of the legal theory supporting the claim asserted.'" *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 284 (5th Cir. 2016) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam)). Thus, the Court will consider Plaintiff's declaratory judgment claim under the presumption that she adequately incorporated the Picket Ordinance in her allegation.

The Court further finds that Plaintiff sufficiently pleads an "actual controversy" for her declaratory judgment claim. At the time she filed her Complaint, Plaintiff faced charges, under what we now know to be Defendant City's Picket Ordinance, for her actions in organizing the protest. (ECF No. 1:10.) Even though that charge has now been dismissed, the "actual controversy" need only be "satisfied at the time the complaint was filed—post-filing conduct is not relevant." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). Plaintiff also raises the disagreement between Plaintiff and Defendants about the constitutionality of the Parade Ordinance as an actual controversy, which can be sufficient for a declaratory judgment claim even though Plaintiff was not prosecuted under that ordinance. *See* (ECF No. 1:11);

*MedImmune*, 549 U.S. at 127–29.  Thus, the Court finds that Plaintiff has established the existence of real, immediate issues between legally adverse parties.  *MedImmune*, 549 U.S. at 127–29.  Therefore, the Court recommends denying Defendants' Motion as to Plaintiff's declaratory judgment claim.

### 3. Leave to Amend Complaint

In her surresponse, Plaintiff requests leave to amend her Complaint "to cite the specific El Paso Municipal Code provisions under which she was charged." (ECF No. 23:3.)  The undersigned declines to consider such request because it is beyond the scope of his authority, which is currently limited to addressing Defendants' Motion only for purposes of this Report and Recommendation. (Text order dated March 22, 2022); 28 U.S.C. § 636(b)(1)(B); W.D. Tex. Civ. R. Appendix C.  Regardless, the Court notes that if Plaintiff were permitted to make her requested amendment, the conclusions of this Report and Recommendation would remain the same.

### B. Section 1983

Plaintiff brings her constitutional claims under 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994).

Municipalities are considered "persons" for Section 1983 purposes, as are local government officials sued in their official capacities. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 & n.55 (1978).  But a municipality can only be held liable for actions that it directly sanctions, not for "actions of its non-policy-making employees under a theory of *respondeat superior*." *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1013 (5th Cir. 2003).  Thus, to sustain a Section 1983 claim against a municipality or a local government official in his or her

official capacity, a plaintiff must show that (1) a municipal policymaker (2) had actual or constructive knowledge of (3) a municipal policy or custom, which (4) was the "moving force" or direct cause of (5) a constitutional violation. *Monell*, 436 U.S. at 694; *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753 (5th Cir. 2009).

### 1. Duplicity of Claims Against Municipal Entity and Municipal Employee in Official Capacity

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. "It is well-established that courts may dismiss claims against individuals in their official capacity, in favor of claims against their employing entity, where the official-capacity claims 'duplicate claims against the respective governmental entities themselves.'" *Doe v. Burleson Cnty.*, No. 1:20-CV-126-SH, 2021 WL 4267894, at *2 (W.D. Tex. Aug. 27, 2021) (quoting *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)).

Here, all of Plaintiff's claims against Defendant Allen and Defendants John and Jane Does in their official capacities, as agents of Defendant City, are identical to her claims against Defendant City. *See* (ECF No. 1:2–4, 9, 12–18.) Thus, the Court recommends granting Defendants' Motion regarding all claims against Defendant Allen in his official capacity, and further recommends dismissing *sua sponte* Plaintiff's claims against Defendants John and Jane Does in their official capacities, because those claims are duplicative of Plaintiff's claims against Defendant City. *See, e.g.*, *Mariscal v. Ochoa*, No. CIV.A L-09-91, 2010 WL 466710, at *3 (S.D. Tex. Feb. 9, 2010); *Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th Cir. 2008) (holding that a district court may dismiss a claim *sua sponte* if the plaintiff is provided with notice and opportunity to respond to such dismissal). Plaintiff will have an opportunity to respond to this

recommended dismissal during the fourteen-day objection period following this Report and Recommendation.

Accordingly, moving forward, the Court will first address Plaintiff's claims against Defendant City. Then, the Court will address Plaintiff's claims against Defendants Allen, John and Jane Does in their individual capacities in Section III.B.5 below. To complete this analysis, the Court will first consider Plaintiff's allegations of constitutional violations. For each plausibly alleged constitutional violation, the Court will then assess whether such violation was caused by a municipal policy or custom sanctioned by a policymaker pursuant to *Monell*.

### 2. Excessive Force

Plaintiff alleges that Defendants violated the Fourth Amendment prohibition against excessive force. Specifically, she claims that Defendants used excessive force when the El Paso police "indiscriminately started beating the protestors for no reason and without warning," "used the SWAT team against the peaceful protestors for no reason," and "deployed the police in full riot gear against peaceful protestors for no reason." (ECF No. 1:16.) Plaintiff claims that Defendants' actions caused her "depression, anxiety, severe mental or physical pain and/or anguish" and to feel "frightened, humiliated, and embarrassed." (*Id.* at 17.)

Defendants City and Allen argue that Plaintiff has not shown that an El Paso police officer used excessive force against her, and in fact, "her Complaint indicate[s] she was not physically injured" at the demonstration. (ECF No. 16:7–8.) They further argue that "Plaintiff asserts that unnamed protesters [were] physically harmed" without providing facts or details supporting that claim. (*Id.* at 8.)

In addition to reiterating her original claims, Plaintiff responds that "[t]he use of SWAT necessarily involves an overwhelming show of force—a force far greater than that normally

applied in police encounters." (ECF No. 17:12.) Further, she says such use of force was unnecessary because the protestors showed no aggression or violence. (*Id.*)

The Fourth Amendment, applicable to states and municipalities via the Fourteenth Amendment, prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. To succeed on a Fourth Amendment excessive force claim, a plaintiff must demonstrate that she was "seized" and additionally that "she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).

### i. Seizure

A seizure involves the intentional use of either "physical force" or a "show of authority" to restrain a person's liberty. *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). A seizure by show of authority exists only if the person submits to the show of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). "[W]hen a person 'has no desire to leave' for reasons unrelated to the police presence, the 'coercive effect of the encounter' can be measured better by asking whether 'a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'" *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *Florida v. Bostick*, 501 U.S. 429, 435–36 (1991)).

The Supreme Court has provided "[e]xamples of circumstances that might indicate a seizure," including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). However, the Supreme Court has since clarified that factors such as an officer's wearing a uniform and carrying a holstered weapon are "unlikely to

contribute to the coerciveness of the encounter absent active brandishing of the weapon," since the fact that officers are usually armed "is a fact well known to the public." *United States v. Drayton*, 536 U.S. 194, 204–05 (2002).

Here, Plaintiff does not allege facts showing that she experienced a seizure. Although Plaintiff indicates that she left the protest after observing an increase in police presence, she does not indicate that the officers threatened her or made any requests of her. *See* (ECF No. 1:7.) Although Plaintiff broadly claims that police beat protestors, her statement of facts does not indicate that she herself was beaten or otherwise physically harmed by police. *See* (*id.* at 4–9.) While she describes the police as being "armed with guns, batons, pepper sprays, and tear gas," she never states that the police brandished or used any of those instruments. (*Id.* at 8.) She also does not explicitly state that she actually witnessed anyone getting beaten. *See* (*id.* at 4–9, 12, 14, 16.) The Court reads Plaintiff's claims that beatings occurred as "unwarranted deductions of fact," *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)), or "'threadbare' allegations, devoid of 'factual enhancement,'" *Strickland v. Broome*, 812 F. App'x 204, 206 (5th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). The Court need not accept such allegations as true for a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Plaintiff's Complaint also reflects that she felt free to terminate the encounter with police. Specifically, she states that she left the protest because she tried to speak to protestors who were "l[a]ying on the ground . . . , protesting near a SWAT team car," but the "crowd was no longer interested in listening to her." (ECF No. 1:7.) Additionally, Plaintiff's Complaint does not indicate that she could not have freely remained at the demonstration, since she never claims that the police told her she needed to leave or end the demonstration. *Cf. Florida v. Royer*, 460 U.S. 491, 497

(1983) (holding that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen"). Thus, for Rule 12(b)(6) purposes, the Court finds that Plaintiff fails to provide facts showing a plausible Fourth Amendment seizure, and therefore, Plaintiff fails to allege a Fourth Amendment claim. Accordingly, the Court recommends granting Defendants' Motion as to Plaintiff's Fourth Amendment claim.

### 3. Freedom of Speech

Plaintiff alleges that Defendants violated her First Amendment "right to free speech and expression." (ECF No. 1:12.) She specifies that Defendants did so "by beating the protestors, charging Plaintiff for failure to obtain a permit for the protest or march, using SWAT team against peaceful protestors for no reason, and otherwise deterring Plaintiff and other protestors from engaging in constitutionally protected right to express their views by peacefully protesting." (*Id.*) She also argues that "Defendants' actions caused physical harm and posed physical threats to Plaintiff[] and other protestors." (*Id.*) Further, she argues that "Defendants' actions have the effect of preventing Plaintiff from engaging in such protests in the future." (*Id.* at 13.)

Defendants City and Allen argue that based on Plaintiff's Complaint, there was no constitutional violation because "it is clear she was able to speak" and "free to march." (ECF No. 16:7.) Regarding the other *Monell* requirements, Defendants argue that Plaintiff fails to identify a "pattern, custom, or practice" of Defendant City that caused the violation of her freedom of speech, and fails to provide facts to show that "a municipal policymaker had knowledge of the alleged constitutional violations." (*Id.* at 9.)

As discussed above, Plaintiff has not alleged facts to demonstrate that the police or "SWAT team" physically harmed, threatened, or beat her, or otherwise told her to leave the protest. Nor does she state that she saw anyone else get physically harmed, threatened, or told to leave. Additionally, Plaintiff's claim that Defendants "otherwise deterr[ed]" her from exercising her freedom of speech is conclusory and thus need not be accepted as true. (ECF No. 1:12); *Iqbal*, 556 U.S. at 678. Thus, the Court will focus on Plaintiff's remaining argument that Defendant City violated Plaintiff's speech rights by charging Plaintiff for failure to obtain a permit.

Under the First Amendment, "members of the public retain strong free speech rights when they venture into public streets and parks." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009). "In order to preserve this freedom, government entities are strictly limited in their ability to regulate private speech in such "traditional public fora." *Id.* (quoting *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 800 (1985)). "Regulations that require speakers to obtain permits before speaking" are known as "prior restraints." *Serv. Emps. Int'l Union, Loc. 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010). Prior restraints "are disfavored and must be confined by 'narrow, objective, and definite standards.'" *Id.* (quoting *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 150–51 (1969)). Such standards depend on the level of discretion granted to the permitting authority under the regulation. *Id.*

The exact iteration of Plaintiff's First Amendment speech claim is unclear, but based on Plaintiff's allegations about the Permit Ordinances, the Court construes her claim as alleging "prior restraint." In so doing, the Court finds that Plaintiff raises facts sufficient for a plausible First Amendment speech claim. Plaintiff initiated the demonstration, which involved speech, at Memorial Park, and the demonstration continued as a march on the streets and sidewalks, all of which are "traditional public fora." (ECF No. 1:5–7); *Cornelius*, 473 U.S. at 800. Plaintiff was

15

later charged for failing to provide advance notice of the demonstration, and now indicates that she fears future prosecution for engaging in similar demonstrations. (ECF No. 1:12–13.) She also alleges that the Permit Ordinances are overbroad. (*Id.* at 11.) Thus, Plaintiff has alleged facts sufficient to raise a plausible claim that Defendant City's Permit Ordinances are invalid prior restraints on speech that suppress her First Amendment free speech rights. *See Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 129–30 (1992).

### a. Remaining *Monell* Factors

Finding a plausible claim of a First Amendment speech violation, the Court now evaluates the remaining requirements for a valid *Monell* claim: the presence of (1) a municipal policymaker, who (2) had actual or constructive knowledge of (3) a municipal policy or custom, which (4) was the "moving force" or direct cause of the constitutional violation. *Monell*, 436 U.S. at 694; *World Wide St. Preachers*, 591 F.3d at 753.

For *Monell* purposes, a policymaker is "one who takes the place of the governing body in a designated area of city administration." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam). A municipal policy is "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam). "[A] facially innocuous policy will support municipal liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997)). Finally, "to satisfy the element of moving force, the plaintiff must show a

16

direct causal connection between the policy and the constitutional deprivation." *Rodriguez v. City of Houston*, 651 F. App'x 282, 285 (5th Cir. 2016).

Plaintiff's First Amendment claim plausibly meets all of the *Monell* criteria. The direct cause of the alleged "prior restraint" on her freedom of speech is a city ordinance promulgated by city lawmakers, which Defendant City knowingly enforced against Plaintiff. *See* (ECF No. 1:9.) Thus, Plaintiff has raised a plausible Section 1983 claim for a First Amendment speech violation against Defendant City. Accordingly, the Court recommends denying Defendants' Motion as to Plaintiff's free speech claim based on the Permit Ordinances.

### 4. Freedom of Assembly

Plaintiff alleges that Defendants violated her First Amendment right to assemble. Specifically, she alleges that Defendants did so when they "investigated, harassed, cited, arrested, and used excessive force against Plaintiff for assembling in a group at a public forum." (*Id.* at 14.) She also alleges that Defendants committed such violation by "using SWAT team and police in full riot gear against peaceful protestors," "charging and prosecuting Plaintiff for failure to obtain a permit for protest or march," and "beating the protestors for no reason." (*Id.*) Defendants City and Allen argue that there was no constitutional violation because Plaintiff's Complaint indicates that she was able to assemble and protest. (ECF No. 16:7.) Regarding the other *Monell* requirements, Defendants argue that Plaintiff has not identified a "pattern, custom, or practice" of Defendant City that caused a suppression of her freedom of assembly. (*Id.* at 9.)

As discussed above, Plaintiff has not alleged facts to demonstrate that the police or "SWAT team" arrested, physically harmed, threatened, or beat her, or otherwise told her to leave the protest. Nor does she state that she saw anyone else get physically harmed, threatened, or told to leave. Additionally, Plaintiff does not substantiate her claim that Defendants "harassed" her.

17

Thus, the Court will focus on Plaintiff's remaining argument that Defendant City violated her First Amendment assembly rights by charging Plaintiff for failure to obtain a permit.

The First Amendment protects "the right of the people peaceably to assemble." U.S. Const. amend. I. The law regarding freedom of assembly is similar to the law regarding freedom of speech. *See Thorne v. Jones*, 765 F.2d 1270, 1274 (5th Cir. 1985) ("[T]he [F]irst [A]mendment expressly protects the freedom of assembly, which is patently a right to associate physically. But this freedom must be read in context; it is not simply a right to associate physically; it is a right to associate physically for the purpose of expressing ideas." (quoting *White v. Keller*, 438 F. Supp. 110, 115–16 n.7 (D. Md. 1977), *aff'd*, 588 F.2d 913 (4th Cir. 1978))); *World Wide St. Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336, 344 (5th Cir. 2007) (noting how, similar to the free speech distinction between content-based and content-neutral policies, the constitutional test for a regulation that impacts free assembly is "dependent on whether the restriction was motivated by the nature of the conduct that is restricted"). Additionally, prior restraints on speech might be considered prior restraints on assembly. *See Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553–54 (1975).

Given these similarities in the law and the same underlying facts for Plaintiff's speech and assembly claims, the Court applies the same analysis to her assembly claim as it did for her speech claim. For the same reasons articulated for Plaintiff's speech claims, the Court finds that Plaintiff has sufficiently alleged facts to bring a plausible First Amendment assembly claim against Defendant City. The Court also finds that the analysis of the remaining *Monell* factors for Plaintiff's speech claim apply equally to Plaintiff's assembly claim. Accordingly, the Court recommends denying Defendants' Motion as to Plaintiff's free assembly claim based on the Permit Ordinances.

### 5. Individual Capacity Claims

Plaintiff also brings claims against Defendants Allen, John and Jane Does in their individual capacities. (ECF No. 1:3–4.) To date, Defendants John and Jane Does have not joined in the Motion or otherwise answered Plaintiff's claims.

Defendants City and Allen's Motion states that "all of Plaintiff's allegations against Allen fail to state a claim upon which relief can be granted, because she has not pleaded any facts to show Allen took any specific action against her or that Allen's individual actions caused a violation of her constitutional rights." (ECF No. 16:10.)

As discussed above, Plaintiff has only plausibly alleged constitutional violations regarding the enforcement of Defendant City's Permit Ordinances. Plaintiff's Complaint does not allege that Defendant Allen or Defendants John and Jane Does were personally involved in the enforcement of the Permit Ordinances in any way outside of their capacities as agents of Defendant City. Thus, the Court recommends granting Defendants' Motion for all of Plaintiff's claims against Defendant Allen in his individual capacity. Further, for the same reasons, the Court recommends dismissing *sua sponte* Plaintiff's claims against Defendants John and Jane Does in their individual capacities.

### IV.   CONCLUSION

For all the reasons set forth above, the Court **RECOMMENDS** that Defendant City of El Paso and Defendant Greg Allen's Rule 12(b)(6) Motion to Dismiss Plaintiff's Original Complaint be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court recommends that the Motion be:

- **GRANTED** as to Plaintiff's claims against Defendant Allen in both his individual and official capacities;
- **DENIED** as to Plaintiff's declaratory judgment claim against Defendant City;

- **GRANTED** as to Plaintiff's Fourth Amendment claim against Defendant City;

- **DENIED** as to Plaintiff's First Amendment free speech claim against Defendant City with respect to the city ordinance, and otherwise **GRANTED** in all other respects; and

- **DENIED** as to Plaintiff's First Amendment free assembly claim against Defendant City with respect to the city ordinance, and otherwise **GRANTED** in all other respects.

The Court **FURTHER RECOMMENDS** that all claims against Defendants John and Jane Does in their individual and official capacities be **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** this 27th day of May, 2022.

**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**