IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| EMMA BOWAR, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CAUSE NO.: EP-21-CV-257-KC |
| | § | |
| THE CITY OF EL PASO, | § | |
| *Defendant.* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Emma Bowar files this First Amended Complaint against the City of El Paso and would respectfully show unto the Court as follows:

## INTRODUCTION

1. George Floyd's murder at the hands of a Minneapolis police officer sparked instant worldwide protest against police brutality towards African-Americans in America. As the news of George Floyd's murder broke, the protestors instantly took to the streets to express their outrage at police brutality against African-Americans in America. These protests were called the Black Lives Matter (hereinafter referred to as "BLM") movement. The City of El Paso was no exception to the BLM, as peaceful protestors have made their voices heard. The protests in El Paso were also an instant reaction to instances of police violence across the country and a reaction to local police violence and the use of excessive force. Even as demand for use-of-force reforms grows, El Paso police officers continue to use unjustified, excessive force against unarmed and/or already detained citizens.

2. The City enforces the unconstitutional Municipal Code that provides no procedure for advance notice for protest or march that took place in less than seventy-two hours. The City of El Paso has effectively criminalized peaceful assembly and expression rights if it takes place in less than seventy-two hours.

3. Plaintiff seeks to declare Municipal Code unconstitutional and redress Defendant's willful, deliberate, and clear constitutional violations and the harm that she has suffered as a result. Furthermore, Plaintiff is entitled to damages, costs, attorney's fees, punitive damages, and any other relief this Court deems appropriate for the violations of her civil rights.

## VENUE AND JURISDICTION

4. This action arises under 42 U.S.C. §1983, which permits the institution of an action for deprivation of rights, privileges and/or immunities secured by the Constitution and laws of the United States when such deprivation occurs under the color of any state, statute, ordinance, regulation, custom or usage.

5. Title 42 U.S.C. § 1983 does not grant substantive rights but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994). It provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under the color of state law. *Id.*

6. Jurisdiction is conferred on this Court by 28 U.S.C. §1331 et seq. for civil rights claims arising under the Constitution and laws of the United States. Pursuant to §1331, this Court has original subject matter jurisdiction over Plaintiff's claims brought under 42 U.S.C. §1983.

7. The acts or omissions giving rise to Plaintiff's claims all occurred in El Paso County, Texas, and all parties reside or operate in El Paso County, Texas. Thus, pursuant to 28 U.S.C. § 1391(b)(2) and (c), the venue is proper in the United States District Court for the Western District of Texas.

**PARTIES**

8. Plaintiff Emma Bowar is a U.S. citizen who resides in El Paso County, Texas.

9. Defendant City of El Paso is a Texas incorporated city/municipality.

**STATEMENT OF FACTS**

10. For years, African-Americans have been the victims of police and vigilante use of deadly excessive force.

11. On May 25, 2020, the killing of George Floyd, who was being arrested for allegedly passing a counterfeit $20 bill to buy cigarettes by the Minneapolis Police Department Officers, was live-streamed over the internet for a few minutes, and later it was televised around the world.

12. After watching this video and hearing the news on television, Plaintiff decided to demonstrate against the excessive use of force by the police; the disparate impact on minority communities of law enforcement policies; a pattern or practice of governments at all levels tolerating systematic racism and failing to adopt effective policies or implement adequate training, supervision, and discipline of law enforcement officers.

13. On May 29, 2020, at 9:41 p.m., Plaintiff posted her first flyer on her social media "Instagram" account, promoting a protest outside the police station on Raynor Street on Sunday evening, May 31, 2020. Plaintiff wanted to organize the protest march in solidarity with the BLM movement and justice for the George Floyd movement.

14. On May 29, 2020, Plaintiff had 150 followers on her Instagram account when she made the original post for a protest on May 31, 2020. Plaintiff's May 29, 2020, social media post garnered much more attention than she had initially anticipated, but she decided to move forward with the protest considering the national importance of the issue.

15. Later on, Plaintiff was approached by someone on her Instagram account, who offered her to make a better flyer since the one she had posted on May 29, 2020, was woefully inadequate. In every iteration of the flyer, she asked everyone to protest verbally and emphasized that we would have to remain peaceful and disengage from police officers.

16. During this process, Plaintiff was in touch with some local organizations, who were not organizing anything yet themselves. One of the organizations had suggested that she change the original meeting point, i.e., outside of the El Paso police station at N. Raynor Street to Memorial Park, so that the protest would be less confrontational.

17. After considering the options, on May 30, 2020, late Saturday night, Plaintiff changed the location from El Paso Police Station at Raynor Street to Memorial Park. After that, she made another post on her "Instagram" account to let everyone know and encouraged everyone to share this information that "Everyone meets at Memorial Park on May 31, 2020, at 6:00 p.m."

18. On May 31, 2020, when Plaintiff, along with her followers or protestors or demonstrators, reached the Memorial Park, had a moment of silence, and then she opened the floor to speeches.

19. Before the protest march began, El Paso Police Department's officers approached Plaintiff and informed her that they would be providing a motorbike escort to Plaintiff's march. The officers informed Plaintiff that they would stay in touch with protestors during their march if

Plaintiff and other protestors or demonstrators had any issues. Plaintiff was never informed that she could not hold the protest march.

20. On May 31, 2020, at about 6:45 p.m., Plaintiff and her Instagram followers marched towards the El Paso police station and arrived there at around 7:00 p.m. They protested outside the police station until 7:25 p.m. At that point, when most of the demonstrators marched back to the Memorial Park, Plaintiff confirmed with the officers of El Paso Police Department that those who stayed there were not considered part of her group.

21. When Plaintiff and other demonstrators were marching back to Memorial Park, she was at the back of the crowd as she was assisting a woman who was having some issues. When Plaintiff was at the corner of Grant and Raynor Street, she started telling people to go home as she saw two police cars drive by with their sirens on towards the other end of the park, and she went running after them.

22. At the other end of Memorial Park near Copia, Plaintiff saw a group of protestors lying on the ground and another group lying down towards the street, protesting near a SWAT team car.

23. At around 8:00 p.m., Plaintiff saw more and more police arriving in riot gear. The police had been waiting at Memorial Park in riot gear and with a SWAT team to confront the peaceful protestors. No one had gotten out of hand until that point. There wasn't any act of aggression or violence on behalf of the protestors.

24. Plaintiff went to the group of the protestors near the SWAT car, tried to convince them to keep marching and go home, and tried to deescalate the situation. It became apparent to Plaintiff that this particular crowd was no longer interested in listening to her, so she left the

protest. Plaintiff encouraged everyone to do a peaceful demonstration from the beginning. Plaintiff left the place of protest by 8:20 p.m.

25. The planning and execution of this protest took less than 48 hours and entirely over the weekend.

26. Plaintiff and other demonstrators in El Paso exercised their rights of assembly and expression by gathering in Memorial Park. Social media facilitated the scheduling of the demonstration and protest march.

27. The goal of Plaintiff and other demonstrators included engendering serious, effective, and immediate actions to bring a halt to the endemic racism infecting America's law enforcement and justice systems. Plaintiff and other demonstrators also wanted to engender efforts to halt the general tolerance of excessive force routinely administered by police officers against arrestees, regardless of innocence or guilt, especially against citizens of the African-American community.

28. Plaintiff and other demonstrators have suffered injuries to their civil rights and their bodies. The use of force was escalated even though the demonstrators, including Plaintiff, posed no threat to police or public safety.

29. Defendant knew that on May 31, 2020, Plaintiff and other demonstrators would protest in Memorial Park and outside of the El Paso Police Department against the killing of George Floyd by a Minneapolis police officer.

30. Almost immediately after the demonstrators, including Plaintiff, began to gather and demonstrate, police officers began to arrive at the protest site.

31. The police officers were dressed in full riot gear, including helmets and face covering, armed with guns, batons, pepper sprays, and tear gas, as well as other weapons and

equipment such as gas masks. The City's SWAT teams were wearing gas masks, and were part of the law enforcement gathering.

32. Anticipating the El Paso protests, many El Paso police officers, their supervisors, and the SWAT team decided to chill the exercise of association and freedom of expression by demonstrators.

33. El Paso City Code § 13.34.020 provides the follows:

A. The organizer of a picket that the organizer knows, or should reasonably know will be attended by a group of twenty-five or more individuals shall give notice of intent to picket to the chief of police or his designee at least seventy-two hours before the beginning of the picket. The notice of intent to picket shall include the following information:

1. The name, address and contact telephone number for the organizer of the picket;
2. The name, address and contact telephone number of the person giving notice of intent to picket if different from the organizer;
3. The name of the organization or group sponsoring the picket;
4. The location where the picket is to take place;
5. The date and time the picket will begin and end; and
6. The anticipated number of participants, and the basis on which this estimate is made.

B. The chief of police shall develop a procedure by which individuals will give notice of intent to picket under this chapter, to include instructions as to where such notices are filed. Such policy shall be on file at police department headquarters and at the offices of the city clerk and the permit official designated to issue permits

under Chapters 13.28, 13.32 and 13.36 of this code, and shall be made available to the public.

C. A notice of intent to picket is not required to be given for picketing by a group of less than twenty-five individuals.

34. On June 9, 2020, Plaintiff was cited pursuant to El Paso City Code § 13.34.020 for failure to provide Notice of Intent to Picket on May 31, 2020.

35. On January 10, 2022, the Municipal Court dismissed the charge against Plaintiff. The charge against Plaintiff was dismissed because the officer had no independent recollection.

36. Defendant City, through its Chief Allen, knew that such tactics were used to provoke demonstrators and justify arrests, but he did not intervene to limit their use.

37. These actions of Defendant were unreasonably intrusive, offensive, unlawful, and totally unnecessary under the circumstances; therefore, Defendant had no state law privilege as law enforcement officers to perform the alleged acts.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION
DECLARATORY JUDGMENT
(Declaring El Paso Municipal Code Unconstitutional)
(Against Defendant City)**

38. Plaintiff repeats, realleges, and incorporates by reference the paragraphs 1–37 with the same force and effect as if fully set forth herein.

39. On or about June 9, 2020, Plaintiff was issued a citation for not having a permit to protest.

40. The First Amendment to the United States Constitution generally bars state governments from requiring a permit when one person or a small group protests in a park or when

a group of any size protests on a public sidewalk in a manner that does not burden pedestrians or vehicles traffic.

41. Plaintiff's exercise of free speech, demonstration, and protest was done in a short period of time in response to breaking news. It was a spontaneous response to current events, namely the execution of George Floyd by the Police.

42. The El Paso City Code § 13.34.020 is unconstitutional as it fails to consider the modern-day reality where protests are happening spontaneously in response to rapidly unfolding news or events where the three day notice is not practical and serves as an obstacle to the right to assemble and demonstrate peaceably.

43. The El Paso Municipal Code does not provide a mechanism to address protests that may unfold in one day, two days, or less than seventy-two hours. It provides for at least seventy-two hours advance notice. As in the case here, Plaintiff's idea of a protest transpired from Friday to the scheduled Sunday.

44. The El Paso Municipal Code is also totally devoid of a mechanism available to the citizenry for situations such as this, where the desired need to protest is immediate and in response to unfolding events of legitimate public concern. The lack of procedure effectively criminalizes the constitutionally protected First Amendment activity. The El Paso Municipal Code impinges on the right of citizens to free speech, protest, and assemble. The El Paso Municipal Code is unconstitutional because it violates the doctrine of overbreadth.

45. The El Paso Municipal Code is unconstitutional because it violates the doctrine of overbreadth. "[E]ven content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression." *Sullivan v. City of Augusta*, 406 F. Supp. 2d 92, 115 (D. Me. 2005).

46. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning the constitutionality and validity of the El Paso Municipal Code's advance notice requirement for demonstration and/or protest march. Plaintiff contends that the El Paso Municipal Code is unconstitutional and invalid, while Defendants contend that it is constitutional and valid.

47. A judicial declaration is necessary and appropriate at this time, under the circumstances presented, so that Plaintiff and Defendants may ascertain their respective rights and duties with respect to the El Paso Municipal Code.

48. Without a declaratory judgment from this Court stating that the City's enforcement of El Paso Municipal Code is unconstitutional as applied to Plaintiff under the First Amendment to the United States Constitution. Plaintiff faces a real and serious threat of physical harm, prosecution, and/or fine now and/or will face in the future if she continues to engage in her protected peaceful protests.

**SECOND CAUSE OF ACTION**
**SUPPRESSION OF FREEDOM OF SPEECH AND EXPRESSION**
**(42 U.S.C. § 1983 claim – Violation of First and Fourteenth Amendments)**
**(Against Defendant City)**

49. Plaintiff repeats, realleges, and incorporates by reference the paragraphs 1–37 with the same force and effect as if fully set forth herein.

50. The First Amendment to the United States Constitution, as applied to state governments through the Fourteenth Amendment, prohibits a state from "abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I.

51. The First Amendment prohibits "restrict[ing] expression because of [expression's] message, its ideas, its subject matter or its content." *Ashcroft v. A.C.L.U.*, 535 U.S. 564, 573 (2002).

52. Defendant violated Plaintiff's right to free speech and expression by charging Plaintiff for failure to provide advance notice of the demonstration. The City effectively placed "prior restraint" on Plaintiff's constitutional right to freedom of speech.

53. Plaintiff and other protestors were not violating the laws or engaging in activity dangerous to public safety.

54. Defendant's actions improperly restricted, deterred, and chilled Plaintiff's right of free speech and expression as guaranteed by the First Amendment to the U.S. Constitution. Defendant unlawfully suppressed Plaintiff's freedom of speech and prevented the peaceful assembly of Plaintiff and other protestors. Defendant was acting under color of law and caused or will cause Plaintiff to be deprived of her constitutional rights in violation of 42 U.S.C. §1983.

55. Defendant's actions have the effect of preventing Plaintiff from engaging in such protests in the future. Based on the harassment, citation, prosecution, and use of force against Plaintiff and other protestors, Plaintiff fears that she will be harmed, threatened, and/or harassed if she engages in peaceful demonstrations and protests again.

56. As a direct and proximate result of Defendant's violations of the First and Fourteenth Amendments, Plaintiff has suffered, is suffering, and will continue to suffer damages in an amount subject to proof at trial. In addition, as a direct and proximate result of Defendant's actions, Plaintiff has sustained and continues to sustain depression, anxiety, severe mental or physical pain and/or anguish of mind and is prevented from transacting in her usual business and enjoyment.

57. Plaintiff is entitled to monetary, compensatory, and punitive damages from Defendant.

58. It has been necessary for Plaintiff to retain the services of the undersigned attorney to pursue this matter, and she is entitled to attorney's fees, costs, and pre-judgment interest herein.

**THIRD CAUSE OF ACTION**
**SUPPRESSION OF RIGHT TO ASSEMBLY**
**(42 U.S.C. § 1983 claim – Violation of First and Fourteenth Amendments)**
**(Against Defendant City)**

59. Plaintiff repeats, realleges, and incorporates by reference the paragraphs 1–37 with the same force and effect as if fully set forth herein.

60. Plaintiff has and had the right to assemble, guaranteed by the First Amendment.

61. Plaintiff and other demonstrators were not violating any law or engaging in activity dangerous to public safety.

62. Defendant unlawfully suppressed Plaintiff's right to assemble and prevented the peaceful assembly of Plaintiff and other demonstrators.

63. Defendant violated Plaintiff's right to assemble by charging and prosecuting Plaintiff for failure to provide advance notice for protest or march.

64. Defendant is liable because it enacted and enforced the El Paso Municipal Code that unreasonably restricts citizens' right to assemble.

65. As a direct and proximate result of Defendant's violations of the Fourth and Fourteenth Amendments, Plaintiff has suffered, is suffering, and will continue to suffer damages in an amount subject to proof. In addition, as a direct and proximate result of Defendant's actions, Plaintiff has sustained and continues to sustain depression, anxiety, severe mental or physical pain and/or anguish of mind and is prevented from transacting in their usual business and enjoyment.

66. Plaintiff is entitled to monetary, compensatory, and punitive damages from Defendant.

67. It has been necessary for Plaintiff to retain the services of the undersigned attorney to pursue this matter, and she is entitled to attorney's fees, costs, and pre-judgment interest herein.

## ATTORNEYS FEES

68. Defendant's conduct and the resulting damages to Plaintiff necessitated her retention of the undersigned attorney.

69. Plaintiff be awarded costs and attorney's fees pursuant to 42 U.S.C §1988 and Fed. R. Civ. P. 54.

## JURY TRIAL DEMANDED

70. Plaintiff hereby demands trial by jury for all causes of action, claims, or issues in this action that are triable as a matter of right to a jury.

## PRAYER

WHEREFORE, Plaintiff respectfully prays and demands the following:

A. Declaratory judgment against Defendant declaring El Paso Municipal Code requiring advance notice for demonstration and march unconstitutional;

B. Judgment for damages within the jurisdictional limits of the Court and against Defendant, for:

　I. Actual damages;

　II. Exemplary or punitive damages;

　III. Reasonable and necessary attorney's fees;

　IV. Court costs and all other recoverable costs;

　V. Pre-judgment and post-judgment interest as provided by law;

C. All other relief, legal and equitable, general and special, to which Plaintiff is entitled.

July 12, 2022					Respectfully submitted,


					*/s/ Fernando Chacon*
					FERNANDO CHACON, ESQ.
					State Bar No. 04052800
					Law Office of Fernando Chacon
					730 Hemphill Court
					El Paso, TX 79907
					(915) 542-3850
					attorney.fchacon@yahoo.com
					*Attorney for Plaintiff*
					EMMA BOWAR